UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CHARLES ROBERT TAYLOR,

    Petitioner,

                                                Case No. 19-cv-11067
                                                Hon. Matthew F. Leitman

v.

KIM CARGOR,[1]

    Respondent.

_____/

**ORDER (1) DENYING PETITION FOR A WRIT OF HABEAS CORPUS (ECF NO. 1); (2) DENYING PETITIONER'S MOTION FOR AN EVIDENTIARY HEARING, LEAVE TO SUPPLEMENT PLEADINGS, AND APPOINTMENT OF COUNSEL (ECF NO. 24); (3) DENYING A CERTIFICATE OF APPEALABILITY; AND (4) GRANTING LEAVE TO APPEAL *IN FORMA PAUPERIS***

Petitioner Charles Robert Taylor is a state prisoner in the custody of the Michigan Department of Corrections. On March 14, 2013, a jury in the Wayne County Circuit Court convicted Taylor of second-degree murder. The state trial court then sentenced Taylor to a term of imprisonment of fifty to seventy-five years.

On March 28, 2019, Taylor filed a *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. (*See* Pet., ECF No. 1.) In his petition, Taylor argues

---

[1] The caption is amended to reflect the proper respondent in this case, the warden of the prison where Petitioner is currently incarcerated. *See Edwards v. Johns*, 450 F. Supp. 2d 755, 757 (E.D. Mich. 2006); *see also* Rules Governing § 2254 Cases, Rule 2(a), 28 U.S.C. foll. § 2254.

that there was insufficient evidence to support his conviction. (*See id.*) Taylor has also filed a motion for (1) an evidentiary hearing, (2) leave to supplement pleadings, and (3) the appointment of counsel. (*See* Mot., ECF No. 24.) Taylor's motion is premised on his assertion that new evidence establishes his innocence. (*See id.*)

The Court has carefully reviewed Taylor's petition and motion, the State's responses, the record, and the new evidence. For the reasons explained below, it concludes that Taylor is not entitled to any of the relief he seeks. The Court therefore **DENIES** the petition and **DENIES** Taylor's motion for an evidentiary hearing, leave to supplement pleadings, and the appointment of counsel. The Court further **DENIES** Taylor a certificate of appealability, but it **GRANTS** him leave to proceed *in forma pauperis* on appeal.

I

The Michigan Court of Appeals summarized the relevant facts underlying Taylor's conviction as follows:

> Defendant Charles Robert Taylor was charged with first-degree premeditated murder, MCL 750.316, for the stabbing death of Josephine Carter. [....]
>
> On June 30, 2004, Carter's body was discovered in an alley between 17380 Hull Street and 17381 Greely Street in the city of Detroit. The body was wrapped in a blue blanket and some kind of sheet or comforter that was stained with blood. Sergeant David Babcock of the Detroit Police Department's Crime Scene Services, who was one of the officers investigating the crime scene, testified that he did not observe any drag marks. Babcock

could not determine where the body had come from, nor could he determine how long the body had been there. He examined the general area, including a near-by vacant home, but did not find any other evidence.

At the time the victim's body was discovered, defendant resided at 17381 Greely with a friend, Jimmy Littlejohn. At defendant's trial, Leah Wisniewski testified that she was living with defendant at the Greely residence in June 2004 and that Littlejohn had a sexual relationship with the victim. Wisniewski also recalled seeing the victim at the Greely residence twice. Wisniewski further testified that she went away for a weekend in June 2004 and that, upon her return, defendant and Littlejohn told her that a body was found in the alley. Wisniewski moved out of the Greely residence in July 2004.

Dr. Carl Schmidt, a forensic pathologist and the chief medical examiner for the Wayne County Medical Examiner's Office, reviewed the autopsy report. Dr. Schmidt described the victim as a 46–year–old black female who was 5'7" tall and who weighed 137 pounds. In relevant part, Dr. Schmidt testified that the victim had an incised wound that went across her neck and was deep enough to penetrate the jugular vein and the larynx all the way to the esophagus, and that this injury was the cause of her death. The victim also had "multiple superficial incised wounds" to the fingers of the right hand, which he opined were defensive wounds that were inflicted when the victim attempted to defend herself against the attack. The victim additionally had an incised, defensive wound on the outside of her right forearm.

Retired Detroit Police Officer Thomas Smith testified that, on June 30, 2004, he went to the morgue and collected trace samples of possible DNA from the victim's body. His partner, Officer William Niarhos (who had also since retired), took fingernail clippings and used a serrated cotton swab to collect material from underneath each of the victim's fingernails. Jennifer Morgan, a biologist at the Michigan State Police Northville Laboratory who

3

> was qualified as an expert in DNA analysis, found a mixture of DNA material from the victim and an unidentified male on the swabs from the victim's left hand. Because Morgan did not initially have a known sample with which to compare the male's DNA, the male sample was entered into the law enforcement Combined DNA Index System (CODIS) database.1 One match or association was reported, which was defendant. A buccal swab was subsequently taken from defendant for further DNA testing in June 2012. After receiving the buccal swab obtained from defendant, Morgan concluded that defendant could not be excluded as the individual who had contributed the unknown male's DNA. Glen Hall, the Forensic Laboratory Manager for the Michigan State Police Northville Laboratory, performed YSTR testing on the DNA sample, which is a test that specifically targets only male DNA. Hall also concluded that defendant could not be excluded as the contributor of the DNA.

*People v. Taylor*, 2014 WL 4087988, at \*1 (Mich. Ct. App. Aug. 19, 2014).

A jury in the Wayne County Circuit Court convicted Taylor of second-degree murder in violation of Mich. Comp. Laws § 750.317.  The state trial court then "sentenced [Taylor] as a fourth-time habitual offender, [Mich. Comp. Laws §] 769.12, to 50 to 75 years' imprisonment." *Id.*

Taylor appealed his conviction by right to the Michigan Court of Appeals. His "sole claim on appeal [was] that the evidence at trial was insufficient to establish his identity as the person who murdered the victim." *Id.* at \*2.  The Michigan Court of Appeals disagreed and affirmed his conviction.  Taylor then sought leave to appeal in the Michigan Supreme Court.  That court denied leave. *See People v. Taylor*, 861 N.W.2d 31 (Mich. 2015).

4

Taylor then returned to the state trial court and filed two motions for relief from judgment pursuant to Michigan Court Rule 6.500. In those motions, Taylor raised claims involving the felony information and felony complaint, ineffective assistance of counsel, subject-matter jurisdiction, and sentencing. The state trial court denied both motions. (*See* ECF No. 19-9, PageID.781-790.) Taylor sought reconsideration and/or re-hearing of those decisions, but it appears the state trial court never ruled on those motions.

Taylor then sought leave to appeal in the Michigan Court of Appeals. (*See id.*, PageID.750-765.) That court dismissed Taylor's application on the basis that it was untimely. (*See id.*, PageID.749.) Taylor next filed an application for leave to appeal in the Michigan Supreme Court, and that court granted Taylor limited relief. The Michigan Supreme Court first noted that "the circuit court record [was] incomplete and in disarray." *People v. Taylor*, 908 N.W.2d 545, 546 (Mich. 2018). It then remanded Taylor's application to the Michigan Court of Appeals with instructions to remand Taylor's case to the state trial court so that court could rule on Taylor's outstanding motions for reconsideration and/or re-hearing. *Id.* The state trial court did so and again denied relief. (*See* ECF No. 19-9, PageID.791-794.) Taylor then returned to the Michigan Court of Appeals and Supreme Court, and those courts denied leave to appeal. See *People v. Taylor*, No. 336572 (Mich. App. Aug. 23, 2018), *lv. den.*, 920 N.W.2d 133 (Mich. 2018).

5

On March 28, 2019, Taylor filed a *pro se* petition for a writ of habeas corpus in the United States District Court for the Western District of Michigan. (*See* Pet., ECF No. 1.) That court then transferred the petition to this forum. (*See* Order, ECF No. 4.) In the petition, Taylor raises a single claim: that insufficient evidence supported his conviction.[2] (*See* ECF No. 1, PageID.6.)

On November 18, 2022, while the petition was pending, Taylor filed a motion for an evidentiary hearing, leave to supplement his pleadings, and the appointment of counsel. (*See* Mot., ECF No. 24.) In the motion, Taylor argues that evidence he recently received "supports his actual innocence of the crime for which he has been convicted." (*Id.*, PageID.1017.)

---

[2] In an Addendum to the petition, Taylor sets forth – on a single page – what he calls "Supporting Facts of 6.500 Motion Issues." (*See* ECF No. 1-1, PageID.21.) But he presents no argument in the petition concerning any of these issues. While the Court concludes that these issues are not properly raised in the petition, the Court nonetheless addresses them in section IV below. In addition, in Taylor's Reply to Respondent's Answer, Taylor asserts that in addition to his insufficiency-of-the-evidence claim, he also made "a clear presentation of a claim of (1) ineffective assistance of counsel, (2) that he was denied the right to present defense evidence, (3) DNA evidence was inappropriately presented, and [(4)] that his sentence was based on an error of law." (ECF No. 20, PageID.988.) Taylor argues he "combined" those other issues "and presented them in an insufficient evidence claim" in the petition. (*Id.*) Taylor does not cite any page of the petition or any exhibits to demonstrate that these additional claims were incorporated into his insufficiency of the evidence claim, as he contends. The Court has carefully reviewed the petition and is not persuaded that Taylor raised these issues by "combining" them with his attack on the sufficiency of the evidence.

## II

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), codified at 28 U.S.C. § 2241 *et seq.*, sets forth the standard of review that federal courts must use when considering habeas petitions brought by prisoners challenging their state court convictions. AEDPA provides in relevant part:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

"The question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable—a substantially higher threshold." *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007).

# III

## A

Taylor raised his sufficiency-of-the-evidence claim on direct review, and the Michigan Court of Appeals rejected it:

> Defendant's sole claim on appeal is that the evidence at trial was insufficient to establish his identity as the person who murdered the victim. "[I]dentity is an element of every offense." *People v. Yost*, 278 Mich. App 341, 356; 749 NW2d 753 (2008); *see also People v. Kern*, 6 Mich. App 406, 409; 149 NW2d 216 (1967) (stating that "the prosecutor must identify the accused as the person who committed the alleged offense" as an essential part of the prosecution's case). This Court reviews a claim of insufficient evidence de novo. *People v. Lueth*, 253 Mich. App 670, 680; 660 NW2d 322 (2002). When reviewing a challenge to the sufficiency of the evidence in a jury trial, this Court determines "whether the evidence, viewed in a light most favorable to the people, would warrant a reasonable juror in finding guilt beyond a reasonable doubt." *People v. Nowack*, 462 Mich. 392, 399; 614 NW2d 78 (2000), citing *People v. Hampton*, 407 Mich. 354; 285 NW2d 284 (1979) and *Jackson v. Virginia*, 443 U.S. 307; 99 S Ct 2781; 61 L.Ed.2d 560 (1979). "The standard of review is deferential: a reviewing court is required to draw all reasonable inferences and make credibility choices in support of the jury verdict." *Nowack*, 462 Mich. at 400.
>
> [….]
>
> The evidence showed that defendant knew the victim; she had a sexual relationship with his friend Jimmy Littlejohn and had occasionally come to the house where defendant and Littlejohn were living. The victim's body was found in the alley behind that house. There were no drag marks to indicate the body had been dragged to that location. The

8

body was found wrapped in a sheet and a blue padded blanket. A sheet and a blue padded blanket had been in the house defendant occupied and Wisniewski testified that those items were missing when she returned to the house from her weekend trip. Wisniewski also testified that when she returned, the basement had the overpowering smell of bleach; it was so bad that her eyes, nose, and throat burned from the smell and she had to use a bandana over her face to enter the basement. It was a reasonable inference from this evidence to surmise that the victim was killed in the basement of the house defendant occupied; that she was wrapped in the sheet and blanket that were missing; the body was dumped into the alley behind the house, and that the basement was cleaned with bleach to eliminate any residue of blood or bodily fluids. The absence of any drag marks also supported the conclusion that the victim was killed nearby because it was unlikely a dead weight of 137 pounds had been carried any great distance; it was more likely the victim was killed nearby, carried a short distance to the alley, and then dumped there.

As defendant argues, those facts do not establish that defendant, as opposed to Littlejohn or someone else, murdered the victim. However, trace DNA material was found underneath the victim's fingernails on her left hand and this DNA material was consistent with defendant's DNA. Given the time of year, the temperature and humidity conditions, and the time the body was exposed to the elements before being found, the testing could not determine that defendant was the only person who could have contributed the DNA material. However, there was no showing that there was any other person with consistent DNA who lived in the house or the general area and had access to the victim. Given these facts, it was entirely reasonable for the jury to believe that instead of some unknown assailant with matching DNA murdering the victim and dumping her body behind the house where defendant was living, it was defendant who had murdered her.

9

> [Expert witnesses rejected Taylor's theory] that the victim could have picked up this DNA from touching something defendant had touched . . . This was not DNA material that was merely found on the victim's skin or clothing; it was DNA that was recovered from beneath her fingernails. It was far more reasonable for the jury to conclude that the DNA had come to be under the victim's fingernails because she had scratched defendant in a defensive posture, as he assaulted her. Moreover, there was circumstantial evidence to support that conclusion beyond the simple placement of the DNA: Wisniewski testified that she observed scratches on defendant's arms and head. Although Wisniewski testified that defendant told her that the scratches came from his attempts to fix barbed wire at the tow yard where he was employed, the jury was entitled to reject this explanation.

*Taylor*, 2014 WL 4087988, at \*\* 2-3.

The Michigan Court of Appeals also rejected Taylor's challenge to the statistical probabilities accompanying the DNA profiles, noting that testimony "merely goes to the weight of the evidence, which the jury is free to consider." *Id.* at \*3 (citation omitted). It concluded that "there was sufficient evidence from which a reasonable jury could have determined that defendant's identity as the person who murdered Josephine Carter was proven beyond a reasonable doubt." *Id.*

**B**

The clearly established federal law governing Taylor's sufficiency-of-the-evidence claim is found in the line of United States Supreme Court decisions concerning the level of proof necessary to satisfy the Due Process Clause. In *In re Winship*, 397 U.S. 358 (1970), the Supreme Court held that "the Due Process Clause

protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *Id.* at 364. And in *Jackson v. Virginia*, 443 U.S. 307 (1979), the Supreme Court determined that sufficient evidence supports a conviction if, "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id*. at 319 (emphasis in original).

Review of insufficiency-of-the-evidence claims under *Jackson* is especially deferential in the habeas context. As the United States Court of Appeals for the Sixth Circuit recently explained, under AEDPA,

> a federal court's "review of a state-court conviction for sufficiency of the evidence is very limited." *Thomas v. Stephenson*, 898 F.3d 693, 698 (6th Cir. 2018). Sufficiency-of-the-evidence claims, in light of both *Jackson* and AEDPA, face a high bar in habeas proceedings because they are subject to two layers of deference:
>
>> First, on direct appeal, it is the responsibility of the jury—not the court—to decide what conclusions should be drawn from evidence admitted at trial. A reviewing court may set aside the jury's verdict on the ground of insufficient evidence only if no rational trier of fact could have agreed with the jury. And second, on habeas review, a federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court. The federal court instead may do so only if

11

> the state court decision was objectively unreasonable.
>
> *Coleman v. Johnson*, 566 U.S. 650, 651, 132 S. Ct. 2060, 182 L.Ed.2d 978 (2012) (per curiam) (citations and internal quotation marks omitted).

*Tackett v. Trierweiler*, 956 F.3d 358, 367 (6th Cir. 2020). *See also Brown v. Konteh*, 567 F.3d 191, 205 (6th Cir. 2009) (explaining that when analyzing a *Jackson* claim on habeas review, a reviewing court "cannot even inquire whether *any* rational trier of fact would conclude that petitioner [ ] is guilty of the offenses with which he was charged. Instead, [the reviewing court] must determine whether the [state] Court of Appeals itself was unreasonable in *its* conclusion that a rational trier of fact could find [the petitioner] guilty beyond a reasonable doubt based upon the evidence introduced at trial") (emphasis in original) (citation omitted).

## C

Taylor has failed to show that the Michigan Court of Appeals' decision denying relief on his sufficiency-of-the-evidence claim was contrary to or unreasonably applied the clearly established federal law described immediately above. Here, given the double layers of deference the Court must apply on habeas review, the Court cannot say that the Michigan Court of Appeals unreasonably determined that "there was sufficient evidence from which a reasonable jury could have determined that defendant's identity as the person who murdered Josephine Carter was proven beyond a reasonable doubt." *Taylor*, 2014 WL 4087988, at *4.

12

Indeed, the testimony presented at trial was sufficient to establish the following facts: Taylor knew Carter, Carter's body was found behind the house where Taylor was living, the house smelled of bleach shortly after Carter was killed, Carter was wrapped in a blanket and sheet that were missing from the house, a witness observed scratches on Taylor's head and arms near the time of the murder, and material consistent with Taylor's DNA profile was found under Carter's fingernails. *Id.* at \*\* 2-3. The Court cannot say that it was unreasonable for the Michigan Court of Appeals to have concluded that this evidence, when viewed in favor of the prosecution, was sufficient to establish Taylor's guilt beyond a reasonable doubt. Taylor is therefore not entitled to federal habeas relief on this claim.

## IV

As noted above (*see* page 6, n.2), in an Addendum to the petition, Taylor listed what he called "Supporting Facts of 6.500 Motion Issues." (*See* ECF 1-1, PageID.21.) Although the Court has concluded that these issues are not properly presented in Taylor's petition, the Court nonetheless briefly addresses them out of an abundance of caution.

The first three "issues" identified in this Addendum relate to the form of the charging documents lodged against Taylor at various points in the state court criminal proceedings. These issues present questions of state law that are not

13

cognizable on federal habeas review. *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991).

The fourth "issue" relates to a claim of ineffective assistance of counsel. Such a claim is cognizable on federal habeas review. But Taylor falls far short of showing that he did not receive effective assistance. He generally alleges that trial counsel failed to conduct an adequate investigation and failed to prepare for trial, but he offers no details concerning trial counsel's alleged inadequacies. Likewise, he generally claims that his appellate counsel was ineffective, but he provides no supporting details. Taylor has not shown that he is entitled to relief on his claim of ineffective assistance counsel.

Finally, Taylor's last "issue" challenges the "jurisdiction" of the state courts on the ground that there was allegedly a delay in his arraignment. Taylor offers only a single sentence on this issue, and he has not shown that he is entitled to relief.

V

On November 18, 2022, Taylor filed a motion for (1) an evidentiary hearing, (2) leave to supplement the pleadings, and (3) the appointment of counsel. (*See* Mot., ECF No. 24.) He argued that the Court should grant that relief because he recently received "DNA-related analysis evidence from the Michigan State Police." (*Id.*, PageID.1016.) Taylor characterized this evidence as "exonerating." (*Id.*) The Court has reviewed the evidence that Taylor claims to have newly-discovered, and

concludes that the evidence does not exonerate Taylor and does not provide any basis for an evidentiary hearing or the other relief Taylor requests. On the contrary, to the extent that the evidence is relevant, it further inculpates, rather than exculpates, Taylor.

The first piece of "newly-discovered" evidence that Taylor identifies is an email exchange between a Michigan State Police forensic scientist and a contact for the North Carolina CODIS system. This exchange notes that the DNA sample taken from under Carter's fingernails matched a DNA profile taken from an offender in North Carolina. (*See id.*, PageID.1024.) Taylor insists that this match is exculpatory because it points to someone other than Taylor as the assailant. The problem for Taylor is that the email exchange makes clear that *he* was the source of the DNA profile from North Carolina. (*See id*.) His DNA appears in the North Carolina database because he was convicted of a felony in that state (*see* Resp., ECF No. 26, PageID.1046-47[3]), and North Carolina requires all individuals convicted of a felony

---

[3] The North Carolina Department of Adult Correction Offender Public Information lists a Charles R. Taylor and reflects the same birthdate as found in Taylor's Michigan Offender Tracking Information System ("OTIS") record. *Compare* https://webapps.doc.state.nc.us/opi/viewoffender.do?method=view&offenderID=1 166474&searchLastName=taylor&searchFirstName=charles&searchMiddleName =r&searchDOBRange=0&listurl=pagelistoffendersearchresults&listpage=1 *with* https://mdocweb.state.mi.us/otis2/otis2profile.aspx?mdocNumber=232897 (last viewed March 30, 2023.) The Court may take judicial notice of the information in these databases. *See Ward v. Wolfenbarger,* 323 F.Supp.2d 818, 821, n. 3 (E.D. Mich. 2004) (Court is permitted to take judicial notice of OTIS).

15

to submit a DNA sample. N.C. Gen. Stat. Ann. § 15A-266.4(b)(1). Thus, the fact that the DNA profile from under Carter's fingernails matched the DNA profile from North Carolina does not in any way exculpate Taylor.

The second piece of "newly-discovered" evidence that Taylor identifies is a Michigan State Police "DNA Mixture Interpretation Worksheet" dated December 1, 2010, which indicated "2+ donors." (ECF No. 27, PageID.1057.) Taylor says that this evidence is exculpatory because it raised the possibility that the DNA sample taken from under Carter's fingernails contained DNA from Carter, Taylor, *and* a third person. Taylor says that if that evidence had been presented to the jury, it may have suggested that a third person was responsible for Carter's murder. However, the jury *was* informed that a third person's DNA could have been present in the sample taken from under Carter's fingernails. More specifically, Jennifer Morgan, a DNA expert for the prosecution, testified that the sample contained a "mixture" of DNA from "*at least two people.*" (Tr. 3/12/13, ECF 19-4, PageID.488.) Under these circumstances, the Court cannot conclude that the "2+ Donors" notation on the

16

worksheet identified by Taylor is newly-discovered evidence that entitles Taylor to an evidentiary hearing.[4]

## VI

For the reasons stated above, the Court concludes that Taylor is not entitled to federal habeas relief. His petition for a writ of habeas corpus is therefore **DENIED.**

In addition, the Court **DENIES** Taylor a certificate of appealability. A certificate of appealability may be issued "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The substantial showing threshold is satisfied when a petitioner demonstrates "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). The Court **DENIES** Taylor a certificate of appealability because jurists of reason would not debate the Court's conclusion that he has failed to demonstrate an entitlement to habeas relief.

---

[4] In the alternative, Taylor asks the Court to "temporarily remove his case from the federal docket" so that he may "return to the State trial court and file a successive motion for relief from judgment . . ." (ECF No. 27, PageID.1051-52.) In essence, Taylor is asking the Court to stay his petition. Because the Court has determined that the newly-discovered evidence is not exonerating or exculpatory, any claim arising out of the discovery of that evidence would plainly lack merit. The Court therefore declines to stay the action to permit Taylor to return to state court to exhaust claims related to the newly-discovered evidence. *See Rhines v. Weber*, 544 U.S. 269, 277 (2005) (explaining that the granting a stay for exhaustion of plainly meritless claims is an abuse of the district court's discretion).

Although the Court declines to issue Taylor a certificate of appealability, the standard for granting an application for leave to proceed *in forma pauperis* on appeal is not as strict as the standard for certificates of appealability. *See Foster v. Ludwick*, 208 F.Supp.2d 750, 764 (E.D. Mich. 2002). While a certificate of appealability requires a substantial showing of the denial of a constitutional right, a court may grant *in forma pauperis* status on appeal if it finds that an appeal is being taken in good faith. *See id*. at 764-65; 28 U.S.C. § 1915(a)(3); Fed. R. App. 24 (a). Although jurists of reason would not debate this Court's resolution of Taylor's claim, an appeal could be taken in good faith. Therefore, Taylor may proceed *in forma pauperis* on appeal.

Finally, the Court **DENIES** Taylor's motion for an evidentiary hearing, leave to supplement the pleadings, and the appointment of counsel (ECF No. 24).

**IT IS SO ORDERED.**

Dated: April 17, 2023

s/Matthew F. Leitman
MATTHEW F. LEITMAN
UNITED STATES DISTRICT JUDGE

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on April 17, 2023, by electronic means and/or ordinary mail.

s/Holly A. Ryan
Case Manager
(313) 234-5126

18